**Robert C. APARICIO, Plaintiff–Appellant,**

**v.**

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant–Appellee.**

No. 95–3068.

United States Court of Appeals, Sixth Circuit.

Argued April 29, 1996.

Decided May 30, 1996.

Mark T. Coulter (argued and briefed), Robert N. Peirce, Jr. & Associates, Pittsburgh, PA, Steve C. Foley, Robert E. Sweeney & Co., Cleveland, OH, for plaintiff-appellant.

David W. Stuckey (argued and briefed), Robison, Curphey & O'Connell, Toledo, OH, for defendant-appellee.

Before: MARTIN and SILER, Circuit Judges; HEYBURN, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an appeal from a decision granting judgment as a matter of law to defendant Norfolk & Western Railway Company after the close of Robert Aparicio's case during the trial of his claim under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1988). Aparicio appeals the district court's decision granting judgment as a matter of law to Norfolk & Western and raises two other issues on appeal. For the following reasons, we REVERSE in part and AFFIRM in part the decision of the district court and REMAND for retrial.

Beginning in 1976, Aparicio worked as a track maintenance laborer for Norfolk & Western until his resignation in January of 1994. Aparicio worked on the "maintenance of way" crew, and his responsibilities included making repairs to the track and railroad crossings. Aparicio's work required him to work with many types of tools such as air tampers, jack hammers, impact wrenches, claw bars, anchor wrenches, grinders, and spiking guns. Between 1987 and 1990 Aparicio changed duties on the crew, and his primary job during that period was to sit and operate the controls of heavy machinery. After 1990, Aparicio returned to his "hands on" duties as a track maintenance laborer.

As early as 1987, Aparicio visited Dr. John Osborne, complaining of numbness and tin-

---

* The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

gling in his right hand. Dr. Osborne recommended conservative treatment and the symptoms resolved themselves. Aparicio returned to work in six weeks and did not have any more difficulty for approximately five years. In late January 1992, Aparicio again sought Dr. Osborne's help regarding pain in both of his hands and wrists. Dr. Osborne referred Aparicio to Dr. Patrick Murray, an orthopedic surgeon, who diagnosed carpal tunnel syndrome. Dr. Murray performed four surgeries on Aparicio for his condition and Aparicio returned to work on May 1, 1992. In September 1993, Aparicio was having pain in his right elbow. Dr. Murray diagnosed epicondylitis ("tennis elbow"). After several months of treatment, Dr. Murray concluded that Aparicio could not return to work. Aparicio has not worked since January 1994.

Aparicio filed suit in May 1993 under Section 51 of the Federal Employers' Liability Act. Section 51 of the Federal Employers' Liability Act provides in pertinent part that:

> Every common carrier by railroad while engaging in [interstate or international] commerce ..., shall be liable in damages to any person suffering injury [or death] while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the [officers, agents, or employees] of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Aparicio's complaint alleged that his injuries were due to his job duties, which exposed him to "excessive and harmful cumulative trauma to his hands, wrists and arms due to the equipment with which he performed his work for the defendant." Aparicio claimed that Norfolk & Western failed to use ordinary care to provide him with a reasonably safe work environment by requiring him to do work in a way that exposed his upper extremities to repetitive trauma. Aparicio further contended that Norfolk & Western was negligent by not evaluating the trauma to his upper body, by not redesigning his job functions or tasks in a more ergonomically

sound manner and by not advising him of the risk of developing carpal tunnel syndrome.

Norfolk & Western moved for summary judgment, claiming that Aparicio's action was time-barred by the three-year statute of limitations in Federal Employers' Liability Act actions because Aparicio should have known in 1987 that his injuries were work-related. As discussed below, the district court granted the motion in part and denied it in part. The case proceeded to trial on the theory that Aparicio could recover if the jury found that his 1992 injuries were separate from his 1987 injury to his right hand.

The trial began on December 19, 1994. At the close of Aparicio's case, Norfolk & Western moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The district court granted the motion, concluding that the record was "barren of any evidence tending to prove negligence." Aparicio now appeals, challenging the district court's decision to grant judgment as a matter of law to Norfolk & Western, to grant partial summary judgment to Norfolk & Western, and to exclude some testimony evidence.

I.

■ We review *de novo* a district court's decision to grant judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), *Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 490 (6th Cir.1995), applying the same standard as did the district court. *Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1023 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 175, 126 L.Ed.2d 135 (1993). Federal Rule of Civil Procedure 50(a) provides that:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law.

Unless otherwise prescribed by law, we have held that a district court should grant a motion for judgment as a matter of law if "there is either a complete absence of proof on the issues or no controverted issues of

fact upon which reasonable persons could differ." *Monette v. AM–7–7 Baking Co.*, 929 F.2d 276, 280 (6th Cir.1991) (citation omitted). Without weighing the evidence or judging the credibility of witnesses, and drawing all inferences in favor of the non-moving party, a district court usually undertakes to determine whether there is sufficient evidence to permit reasonable jurors to find for the non-moving party. *Cook v. American Steamship Co.*, 53 F.3d 733, 740 (6th Cir.1995) (citation omitted). Where the defendant has moved for judgment as a matter of law at the close of the plaintiff's case, this standard requires the district court to decide whether a reasonable jury could conclude that the plaintiff has not proven an element of his or her case. The "reasonableness" inquiry upon a defendant's motion for judgment as a matter of law is not determined by asking whether the plaintiff has proven his or her case by a preponderance of the evidence because the defendant has not yet presented any proof. Rather, a court looks only to the plaintiff's evidence to make its determination.

■ A different standard applies in Federal Employers' Liability Act cases. The Supreme Court has held that a jury question is created in a Federal Employers' Liability Act case if

the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence.

*Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957) (footnotes omitted); *see also Green v. River Terminal Ry. Co.*, 763 F.2d 805, 806–07 (6th Cir.1985) (same, quoting *Rogers*). While the *Rogers* standard for the quantum of evidence also uses the language of "reasonableness," the content of the *Rogers* "justify with reason" standard is informed more by the public policy behind the Federal Employers' Liability Act rather than by an abstract notion of "reasonableness." Consequently, no appellate court has approved of applying the customary "reasonableness" standard when a district court is faced with a motion for judgment as a matter of law in a Federal Employers' Liability Act case.

■ The Supreme Court has observed that Congress, in enacting the Federal Employers' Liability Act, intended it to be a departure from common law principles of liability as a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); *Consolidated Rail Corp. v. Gottshall*, — U.S. —, —, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994) (stating that through the Federal Employers' Liability Act "Congress crafted a federal remedy [for railroad workers] that shifted part of the 'human overhead' of doing business from employees to their employers") (citations omitted). This Court has called the Federal Employers' Liability Act a "remedial and humanitarian statute ... enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir.), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 331 (1973). Describing Congress's preference that facts in Federal Employers' Liability Act cases be determined by a jury, the Supreme Court observed in *Rogers* that "decisions of this Court after the 1939 amendments [to the Federal Employers' Liability Act] teach that the Congress

vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury." 352 U.S. at 510, 77 S.Ct. at 451; *see also Bailey v. Central Vermont Ry., Inc.,* 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943) (noting that the "right to trial by jury is ... part and parcel of the remedy afforded railroad workers under the [Federal] Employers' Liability Act"). Because the benefit of a jury trial is considered to be "a goodly portion of the relief" which Congress has afforded railroad workers under the Federal Employers' Liability Act, *Bailey,* 319 U.S. at 354, 63 S.Ct. at 1064, the jury should determine liability so long as the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. Nevertheless, despite Congress's desire to preserve a plaintiff's right to a jury trial in Federal Employers' Liability Act cases, "it is still the function of the trial judge within narrowly prescribed limits ... to pass upon the sufficiency of the evidence." *Green,* 763 F.2d at 807 (quoting *Fritts v. Toledo Terminal R.R. Co.,* 293 F.2d 361, 363 (6th Cir. 1961)).

Aparicio argues that in a Federal Employers' Liability Act case, judgment as a matter of law can be directed only in the complete absence of any probative facts. Aparicio is not correct. While the Supreme Court has made it clear on more than one occasion since *Rogers* that an employer subject to the Federal Employers' Liability Act need be only *slightly negligent* in order to be liable to a plaintiff, *Gottshall,* —— U.S. at ——, 114 S.Ct. at 2404, the question has remained as to the *quantum of evidence* a Federal Employers' Liability Act plaintiff must present to overcome a motion for judgment as a matter of law. Specifically, courts have struggled with the question of whether a Federal Employers' Liability Act plaintiff need present only *slight* evidence or a *scintilla* of evidence as to each element of his or her claim in order to withstand a motion for judgment as a matter of law, or whether a plaintiff must present something more than that.

Prior to *Rogers,* the Supreme Court required something more than a scintilla of evidence tending to show negligence. *Brady v. Southern Ry. Co.,* 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943). In *Brady,* the Court held that:

> The weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims.

320 U.S. at 479, 64 S.Ct. at 234 (citations omitted). After *Rogers,* however, some members of the Supreme Court interpreted *Rogers* as requiring only a scintilla of evidence to prove negligence. In a dissenting opinion in *Sinkler v. Missouri Pac. R.R. Co.,* Justice Harlan interpreted *Rogers* as requiring a Federal Employers' Liability Act plaintiff to present only a scintilla of evidence as to each element of the claim in order to create a jury question. Justice Harlan wrote:

> This case is a further step in a course of decisions through which the Court has been rapidly converting the Federal Employers' Liability Act ... into a workmen's compensation statute.

> This progress recently gained marked momentum with *Rogers v. Missouri Pacific R. Co.* ... decided in the 1956 Term, where the Court in effect established a "scintilla" rule in these cases for judging the sufficiency of the evidence on the issue of "causation." In subsequent decisions that rule has been extended, sub silentio, to cover also the issue of "negligence." More recently in *Kernan v. American Dredging Co.,* 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) ... decided a few

months ago, the Court still further expanded these enactments to embrace a concept of absolute liability for violation of any statutory duty occasioning injury to one entitled to sue under them.

356 U.S. at 332–33, 78 S.Ct. at 763–64 (footnote omitted) (J. Harlan, dissenting, joined by J. Frankfurter); *Harris v. Pennsylvania R.R. Co.*, 361 U.S. 15, 27, 80 S.Ct. 22, 30, 4 L.Ed.2d 1 (1959) (J. Harlan, dissenting, joined by J. Whittaker) ("I cannot understand how on this record even the 'scintilla' rule of *Rogers* and its progeny, ... can be thought to justify the overturning of this judgment."). A majority of the Supreme Court since *Rogers*, however, has not defined in a more precise manner the quantum of evidence a Federal Employers' Liability Act plaintiff must produce in order to withstand a defendant's motion for judgment as a matter of law.

Appellate courts have not uniformly understood *Rogers* as requiring a Federal Employers' Liability Act plaintiff to present only a scintilla of evidence to overcome a motion for judgment as a matter of law. The Seventh Circuit has embraced the scintilla rule. *See Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir.1990) (holding that a trial judge "must submit an [FELA] case to the jury when there is even slight evidence of negligence").[1] More federal courts have rejected the scintilla rule. *See Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1364 (9th Cir.1995) (rejecting the scintilla rule and stating that the test for submitting a Federal Employers' Liability Act case to a jury is whether it is "not outside the possibility of reason" that the evidence supports the plaintiff's case) (citation omitted); *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir.1994) (adopting a "substantial evidence" standard in order to submit a Federal Employers' Liability Act case to the jury) (citation omitted);[2] *Gill v. Pennsylvania*, 201 F.2d 718,

720 (3d Cir.), *cert. denied*, 346 U.S. 816, 74 S.Ct. 27, 98 L.Ed. 343 (1953) (applying the *Brady* quantum of evidence standard).

This Circuit has not specifically addressed the issue of the quantum of evidence a Federal Employers' Liability Act plaintiff must present as to each element of his or her claim in order to withstand a defendant's Rule 50(a) motion. In *Rodriguez v. Delray Connecting R.R.*, this Court refused to adopt the scintilla rule and affirmed the district court under the "justify with reason" standard of *Rogers*. 473 F.2d 819, 820 (6th Cir.1973). In *Rodriguez* this Court observed that

[t]he quantum of fault necessary to support a finding of employer liability was resolved by the Supreme Court in *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 ..., wherein the Court stated: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." .... Dean Prosser has written that under this test jury verdicts for the employee can be sustained upon evidence which would not be sufficient in an ordinary negligence action. Prosser, Torts (4th ed.1971) § 80 p. 536. Professor Moore argues that where this minimal amount of evidence is sufficient to withstand a motion for a directed verdict, the federal courts in fact, if not in name, have adopted the "scintilla rule." 5A Moore's Federal Practice ¶ 50.02[1]; See Harlan, J., dissenting in *Ferguson v. Moore–McCormick Lines*, 352 U.S. 521, 563–564, 77 S.Ct. 459, 480–481, 1 L.Ed.2d 515 (1957) [FN3]. *While we expressly disclaim any intention of adopting this rule in this Circuit*, we conclude that under the foregoing Supreme Court decisions we cannot say that the District Court committed re-

---

**1.** The Seventh Circuit derived the rule that only *slight evidence* is required to create a jury question in a Federal Employer's Liability Act case from the substantive requirement that only *slight negligence* by the employer will permit a recovery under the Act. 921 F.2d at 131 (discussing *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448).

**2.** The Fourth Circuit in *Brown* followed the Supreme Court's pre-*Rogers* opinion in *Brady v. Southern Ry. Co.* in holding that a Federal Employers' Liability Act plaintiff must present "substantial" evidence to create a jury question. The Fourth Circuit, thereby, equates *Brady*'s "more than a scintilla" of evidence with "substantial" evidence.

versible error in denying the railroad's motion for a directed verdict.

FN3. It should be noted that in pre-*Rogers* cases the Court stated that even in F.E.L.A. cases the plaintiff must present more than a scintilla of evidence before the case may properly be submitted to the jury. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479, 64 S.Ct. 232 [234], 88 L.Ed. 239 (1943); *Western & Atlantic R.R. Co. v. Hughes*, 278 U.S. 496, 498, 49 S.Ct. 231 [232], 73 L.Ed. 473 (1929).

*Id.* (emphasis added). Thus, after *Rodriguez*, the precise quantum of proof required of a Federal Employers' Liability Act plaintiff to withstand a motion for judgment as a matter of law in this Circuit was not certain.

In 1987, this Court stated that the *Brady* "more than a scintilla" standard applied for determining whether a plaintiff's claim under the Federal Safety Appliance Act, 45 U.S.C. § 1, should be submitted to a jury. *Erskine v. Consolidated Rail Corp.*, 814 F.2d 266, 269 (6th Cir.1987). The Supreme Court has observed that the Federal Safety Appliance Act does not create a cause of action, but that the cause of action under that statute is created by the Federal Employers' Liability Act. *Crane v. Cedar Rapids & Iowa Ry. Co.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969). Thus, arguably, *Erskine* answers the question left unresolved in *Rodriguez*. Because we did not discuss the effect of *Rogers* and its progeny on the *Brady* standard in *Erskine*, we take the opportunity to clarify the *Brady* standard now in light of these cases.

■ With all due respect to Justice Harlan's view of *Rogers*, we believe that the "more than a scintilla" rule of *Brady* is still the standard governing the quantum of evidence a plaintiff in a Federal Employers' Liability Act case must present in order to withstand a Rule 50(a) motion. Our disagreement with Justice Harlan, however, may be based upon a distinction without a difference. "More than a scintilla" means precious little more than a scintilla given the Supreme Court's view that Congress has fa-

vored Federal Employers' Liability Act plaintiffs with a jury resolution of all colorable factual issues. *Rogers*, 352 U.S. at 510, 77 S.Ct. at 451. Thus, we hold that *Brady* and *Rogers* require a Federal Employers' Liability Act plaintiff to present more than a scintilla of evidence in order to create a jury question on the issue of employer liability, but not much more.

■ A Federal Employers' Liability Act plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir.1990) (quoting *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir. 1987)). A plaintiff must present more than a scintilla of evidence to prove that (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act. *Green*, 763 F.2d at 808.[3] We now turn to the elements of Aparicio's claim—duty, breach, foreseeability, and causation—to determine if judgment as a matter of law was warranted.

*Duty and Breach.* The Supreme Court in *Urie v. Thompson* stated that railroads have a duty to furnish employees with a "reasonably safe place in which to work and such protection [against the hazard causing the injury] as would be expected of a person in the exercise of ordinary care under those circumstances." 337 U.S. at 179 n. 16, 69 S.Ct. at 1029 n. 16, (citing *Sadowski v. Long Island R.R. Co.*, 292 N.Y. 448, 55 N.E.2d 497, 501 (1944)). The Court continued by noting that "[o]rdinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect.... It must be commensurate with known dangers." *Id.* (quoting *Sadowski*, 55 N.E.2d at 500). However, "known dangers" does not mean that the

---

**3.** The Supreme Court has stated that federal common law controls what constitutes negligence under the Federal Employers' Liability Act. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949) (footnote omitted).

injury must have occurred on a previous occasion to the same or a similarly situated worker. *Gallick v. Baltimore & Ohio R.R.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).[4]

■ While a railroad has a duty to use ordinary care to protect employees from known dangers, *Urie v. Thompson* also established that a railroad breaches its duty to its employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees. "[W]e think that negligence, within the meaning of the Federal Employers' Liability Act, attach[es] if the [employer] 'knew, or by the exercise of due care should have known,' that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees." *Urie,* 337 U.S. at 178, 69 S.Ct. at 1028. In *Green,* we stated that "[t]he defendant's duty [in a Federal Employers' Liability Act case] is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances." 763 F.2d at 809 (citations omitted).

■ Norfolk & Western argues that it could not have breached its duty to Aparicio because there are no standards regarding ergonomics[5] set forth by the Federal Railroad Administration. It argues further that there are no standards recognized by the scientific community to determine whether a particular person was exposed unreasonably to a risk of developing carpal tunnel syndrome or epicondylitis, and that Aparicio failed to put forth any evidence to show that it breached any standard of care. Norfolk & Western also argues, without controlling authority, that, for it to have breached any duty of care to Aparicio, it would have to have had actual or constructive notice that Aparicio's work conditions would cause the alleged injury. Norfolk & Western believes that, at most, the evidence permits the conclusion

that it was aware of general studies regarding carpal tunnel syndrome and epicondylitis, "none of which related these conditions to the jobs Aparicio performed." Norfolk & Western also argues that it had no notice, and therefore no duty, because it had received no other complaints from employees regarding carpal tunnel syndrome and epicondylitis.

The fact that a regulatory body has not issued any applicable ergonomic standards does not relieve Norfolk & Western of its duty to provide a workplace safe from foreseeable conditions which might pose a danger to its workers. The standard of care is whether Norfolk & Western acted as a reasonably prudent employer, not whether it complied with any applicable regulations. The testimony of Dr. Robert Andres, Aparicio's ergonomics expert, shows that there were ergonomic risk factors and known remedial measures that had been described and accepted by the scientific community. This information was widely published in trade and scientific journals. A jury could accept Dr. Andres' testimony and find that a reasonably prudent employer would have known about the risk factors and taken steps to ameliorate them. In addition, the law does not impose a duty on an employer to address a safety hazard or risk only in the event that a similar injury has occurred before from the same cause.

■ Construing the evidence in a light favorable to Aparicio, he has presented more than a scintilla of evidence to show that Norfolk & Western should have known that he was at risk for developing an upper extremity cumulative trauma injury and that a reasonably prudent employer would have taken steps to ameliorate the risk of injury. Dr. Andres testified as to the risk factors accepted in the biomechanical and ergonomics community for upper extremity cumulative trauma disorders such as carpal tunnel syndrome and epicondylitis. These risks fac-

---

4. In *Gallick,* the plaintiff was required to work near a stagnant pool infested with vermin and insects. Plaintiff received an insect bite which became infected and plaintiff was injured. The Supreme Court disapproved of a definition of "known dangers" or foreseeability requiring that a plaintiff's injury have resulted from a cause

that had caused injuries to employees in the past. 372 U.S. at 121, 83 S.Ct. at 667.

5. Ergonomics is the "science of people performing work" and the study of the stresses on the human body which cause injury at work. *J.A.* at 163–65.

tors include sustained exertion, such as holding something for a long period of time and applying force, placing hands in positions not in line with the forearm, and being subjected to vibrations from power tools. *J.A.* at 171–73; 185–92. Dr. Andres also testified that an industrial employer like Norfolk & Western would learn of these ergonomic risk factors, as well as of methods of determining whether an employee was exposed to a risk of injury and methods of amelioration, through scientific and professional publications, trade journals and industry publications. Further, Dr. Andres stated that an employer like Norfolk & Western would know of the ergonomic literature through its medical department or safety person. *J.A.* at 193; 200–201.

From the depositions of Norfolk & Western's medical director, Ray Prible, M.D., and former medical director from 1987 to 1994, John Salb, M.D., the jury would learn that Norfolk & Western had an "ergonomics program" which included the identification of risk factors, and amelioration of the risk factors through engineering changes or administrative controls (job rotation and breaks). *J.A.* at 348–49. Dr. Salb was aware of professional articles being published about carpal tunnel syndrome and repetitive or forceful activities in the workplace as early as the 1970's. Dr. Prible testified that he understood that risk factors "are things that you do that could potentially put you in a position of having problems down the road." *J.A.* at 345. Dr. Prible also testified that, as medical director of Norfolk & Western, if it came to his attention that a worker suffered from carpal tunnel syndrome because of work, he would either go out to the workplace himself or send Norfolk & Western's safety person to investigate the job. *J.A.* at 346. Aparicio testified that in 1992 he informed Norfolk & Western in writing that he had carpal tunnel syndrome because of his work (Plaintiff's Exhibit 4), but that defendant returned him to the same job duties with no modifications after his surgeries. Aparicio's evidence could justify with reason a finding that, in the exercise of due care, Norfolk & Western should have known that Aparicio's job duties put him at risk for developing a cumulative trauma disorder such a carpal tunnel syndrome or epicondyli-

tis. A jury could also find, based on the depositions of Drs. Prible and Salb, that Norfolk & Western breached its duty by not evaluating Aparicio's job and taking remedial measures in that it knew or should have known that he was exposed to repetitive shocks and vibration from his tools that put him at risk for cumulative trauma disorders.

■■■■■ *Causation and Foreseeability.* Aparicio contends that he presented probative evidence as to the issues of causation and foreseeability. The test for causation in Federal Employers' Liability Act cases is whether an employer's actions played *any part at all* in causing the injury. "[T]he causation test is whether 'employer negligence played any part, even the slightest, in producing the injury' for which the plaintiff seeks recovery." *Adams,* 899 F.2d at 539 (quoting *Rogers,* 352 U.S. at 506, 77 S.Ct. at 448). On the issue of causation, Norfolk & Western argues that Dr. Murray did not testify that Aparicio's job caused his conditions and, furthermore, that Dr. Andres was not called to testify on the issue of causation by work activities. No tests or experiments were performed regarding whether Aparicio's work was the cause of his condition. Norfolk & Western argues that, "[t]he most that can be inferred from the evidence is simply that Aparicio developed these conditions at work."

Given the "relaxed" standard of causation in Federal Employers' Liability Act cases, *Gottshall,* —— U.S. at ——, 114 S.Ct. at 2404, we believe Aparicio has presented more than a scintilla of evidence to prove that Norfolk & Western's breach of its duty to him was a causal factor, at least in small part, of his injuries. Favorably construed, Dr. Prible's deposition would permit an inference that a person with a risk factor for an injury or illness may result in the person with the risk factor developing the injury or illness. *J.A.* at 345–46. Aparicio and his crew co-worker John Powers testified extensively about the repetitive vibrations and shocks to which workers on the maintenance crew were daily exposed from the various power tools. *J.A.* at 82–85 (Aparicio); 336–338; 341–42 (Powers). Dr. Salb's evidence tends to prove that Norfolk & Western was aware of the occupa-

tional hazard of repetitive motion injury and that Norfolk & Western would take corrective measures to prevent such injuries. *J.A.* at 352–53.[6] Dr. Salb's statements also show that some of the tools Aparicio worked with—jack hammers, tampers and impact wrenches—caused vibrations and that a remedial measure to protect against excessive vibration would be to put an anti-vibratory wrap on the handles of such tools. *J.A.* at 355. This evidence was sufficient to create a jury question as to whether Norfolk & Western's negligence may have caused, even in some small way, Aparicio's injuries. To say that the evidence is sufficient to create a jury question does not mean, of course, that a jury will ultimately find that Norfolk & Western's negligence caused Aparicio's injuries under the preponderance standard applicable when the case is submitted to the jury. *Morrison v. New York Cent. R.R. Co.*, 361 F.2d 319, 320–21 (6th Cir.1966); *see also Hausrath v. New York Cent. R.R. Co.*, 401 F.2d 634, 637–38 (6th Cir.1968) (discussing *Morrison*).

■ On the issue of foreseeability, Norfolk & Western reads the Supreme Court's decision in *Gallick v. Baltimore & Ohio R.R.* as holding that previous incidents of injury are not required for the injury to be foreseeable *if* there is other evidence of foreseeability. Norfolk & Western insists that it simply had no reason to believe that Aparicio was susceptible to developing carpal tunnel syndrome and epicondylitis from his work duties. As stated above, *Gallick* held that even if direct causation is proven, a Federal Employers' Liability Act case is not over.

Reasonable foreseeability of harm must also be determined. 372 U.S. at 117, 83 S.Ct. at 665 (stating that "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence"). Although the Supreme Court in *Gallick* does not discuss in detail a definition of "reasonable foreseeability" in terms of the degree of certainty, the Court in *Gallick* disapproved of any definition of foreseeability requiring that a similar incident have occurred previously. 372 U.S. at 120, 83 S.Ct. at 667. Neither do we find a requirement in *Gallick* that there must be some other evidence of foreseeability if a similar injury has not occurred previously to another worker.

Regarding the degree of certainty to which a railroad must anticipate harm in order to be held liable, the Supreme Court has discussed foreseeability using the term "likelihood." In *Rogers*, the Supreme Court approved a jury finding where the probative facts supported the conclusion that "respondent [railroad] was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did." *Rogers*, 352 U.S. at 503, 77 S.Ct. at 447 (footnote omitted); *Ringhiser v. Chesapeake & Ohio Ry. Co.*, 354 U.S. 901, 903, 77 S.Ct. 1093, 1095, 1 L.Ed.2d 1268 (1957) (same, citing *Rogers*). While the Court in *Gallick* approved of this definition of foreseeability in *Rogers*, it went so far as to state that, in a Federal Employers' Liability Act case, "a tortfeasor must compensate his victim for even the improbable or unex-

---

6. Q [Aparicio]: In [articles you read regarding carpal tunnel syndrome] that you referred to from the '70's, to your recollection, would they have referred to the possibilities of there being a connection between carpal tunnel syndrome and repetitive or forceful activities with the upper extremities?

A [Dr. Salb]: I think that was the feeling at that time. Although I can remember a couple of women who were homemakers that had carpal tunnel syndrome.

Q: During the period of time when you were with Norfolk [July 1987 through February 1994], ... did you ever implement through the medical department any type of plan or program to mitigate any risks of accumulative trauma disorders?

A: Yes. .... And I think specifically it was such that if an employee complained about car-

pal tunnel or if he would have had a motion condition, we would ... evaluate work habits in the position and so forth and make recommendations, and I may get a medical report, may have gotten medical reports from the attending physicians to what his opinions were.

And if we felt it was work oriented, changes might be made in the way the job was done and to create a better ergonomic condition or to put at that time laboratory sleeves on the machines or whatever they were using. So this was ongoing.

Q: What period in time did this program begin?

A: I think probably in the late '80's, early '90's.

*J.A.* at 354–55.

pectedly severe consequences of his wrongful act." 372 U.S. at 121, 83 S.Ct. at 667. As this Court has observed, "[t]he test for foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that *an* injury might occur...." *Green,* 763 F.2d at 808 (citing *Miller v. Cincinnati New Orleans & Texas Pac. Ry. Co.,* 203 F.Supp. 107, 113 (E.D.Tenn.1962), *aff'd,* 317 F.2d 693 (6th Cir.1963)).

> In this case the district court stated that The test of foreseeability is whether, in light of all of the circumstances, a reasonably prudent railroad should or could reasonably have anticipated that some injury *would result* to an employee under the circumstances, at said time and place, from any act or negligence of the Defendant.

*J.A.* at 47 (emphasis added). The district court required a degree of certainty not found in the Supreme Court's statements regarding the nature of foreseeability in Federal Employers' Liability Act cases. Certainly, a railroad need not anticipate that an injury *would result* from its actions, but must only reasonably anticipate that the injury is *likely* to result. Aparicio has presented more than a scintilla of evidence tending to prove that Norfolk & Western could reasonably have anticipated that a track laborer such as Aparicio working with the tools he was assigned to use was likely to develop an upper extremity cumulative trauma injury.

Based on the foregoing, the district court erred in granting judgment as a matter of law to Norfolk & Western. Aparicio has presented more than a scintilla of evidence so as to create a jury question regarding each element of his Federal Employers' Liability Act claim.

## II.

 Our review of a district court's decision to grant summary judgment is *de novo. Mickler v. Nimishillen & Tuscarawas Ry. Co.,* 13 F.3d 184, 186 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). The district court grant-

ed summary judgment to the railroad on two statute of limitations issues. Section 56 of the Federal Employers' Liability Act requires an employee to bring an action "within three years from the day the cause of action accrued." As the Seventh Circuit stated in *Fries v. Chicago & Northwestern Transp. Co.,* 909 F.2d 1092 (7th Cir.1990),

> [a]ccrual is defined in terms of two components, the injury and its cause, for [Federal Employers' Liability Act] statute of limitations purposes. In *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Supreme Court stated that when the specific date of *injury* cannot be determined because an injury results from continual exposure to a harmful condition over a period of time a plaintiff's cause of action accrues when the injury manifests itself. *Id.* at 170, 69 S.Ct. at 1025.... In [*United States v.*] *Kubrick,* [444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ] ... [t]he Court stated that once a plaintiff is in possession of the critical facts of both injury and governing cause of that injury the action accrues even though he may be unaware that a legal wrong has occurred. *Id.* at 122–23, 100 S.Ct. at 359–60.

*Id.* at 1095 (emphasis in original). The Seventh Circuit concluded that "a cause of action accrues for [Federal Employers' Liability Act] statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Fries,* 909 F.2d at 1095–96.

The district court ruled that Aparicio's claim for his 1987 injury was time-barred because he knew at that time that his injury was work-related. Indeed, in his deposition Aparicio stated that Dr. Osborne told him that his injury was work-related. Aparicio later submitted an affidavit stating that he was mistaken about what Dr. Osborne had told him and that in actuality he was unaware of the cause of his injury until 1992. Based on this Court's holding in *Farrell v. Automobile Club,* the district court properly struck the affidavit, leaving no material factual dispute regarding Aparicio's knowledge that his 1987 injury to his right hand was work-related. 870 F.2d 1129, 1132 (6th Cir.

1989) (holding that a party who has been examined at length by deposition may not rely on an affidavit filed to contradict the deposition evidence to create a genuine issue of fact so as to defeat a motion for summary judgment) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir.1984)). Summary judgment was properly granted on this issue in so far as it relates to any injury in his right hand and wrist from 1987.

■ The district court denied summary judgment to Norfolk & Western because Aparicio created a disputed issue of fact as to whether his 1992 injuries were a separate injury or a continuation of his 1987 injury. The affidavit of another physician, Dr. Cohen, opined that Aparicio's 1992 injuries were separate from his 1987 injury. We agree that this affidavit created a genuine issue on a material fact for trial. If Aparicio's injuries are a separate injury, then Aparicio's claim is not time-barred.

Finally, Aparicio claimed that even if the jury found that his 1992 injuries were a continuation of his 1987 injury, he should still be allowed to recover on the theory that Norfolk & Western negligently *aggravated* his 1987 injury in 1992, thus creating a severable claim for trial. Rejecting the argument that any aggravation of an injury is a severable cause of action in a Federal Employers' Liability Act case, the district court ruled that "if Plaintiff's carpal tunnel syndrome condition in 1992 was an aggravation of the condition in 1987, then the limitations period would bar the claim." In so holding, the district court rejected the position of the Third Circuit in *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356 (3d Cir.1986) (holding that a Federal Employers' Liability Act plaintiff may recover for damages for aggravation of his original pulmonary disease/injury if he could prove that the railroad was negligent in permitting him to continue to be exposed to diesel fumes). We agree that an aggravation of an original injury that is claimed to have been caused by an employer's negligence is not a severable action under the Federal Employers' Liability Act.

We believe that the Seventh Circuit has stated the better view. In *Fries*, the Seventh Circuit observed that the fact that an injury "has not reached its maximum severity ... but continues to progress" does not relieve the plaintiff of the duty to use reasonable diligence to discover the original injury and its cause. 909 F.2d at 1096. Any "aggravation" of the original negligently caused injury would only affect the plaintiff's damages, and would not require a separate determination of liability or causation. Furthermore, a rule permitting severability of a claim that an original, continuing injury has been aggravated would contravene the purpose of the discovery rule articulated in *Urie* requiring Federal Employers' Liability Act plaintiffs to use reasonable diligence to discover the cause of an injury once the injury manifests itself. Thus, we disagree with the Third Circuit that the aggravation of an original injury is a severable cause of action under Federal Employers' Liability Act.[7]

### III.

Finally, we cannot review Aparicio's challenge to the district court's decision to exclude Dr. Andres to answer the question found at TR 177–79. Aparicio made no offer of proof after the court excluded the evidence as required by Federal Rule of Evidence 103. Thus, Aparicio may not bring this claim on appeal. Fed.R.Evid. 103(a) (stating that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [an offer of proof is made]").

Based on the foregoing, we REVERSE the district court's decision granting judgment as a matter of law to Norfolk & Western Railway Company and REMAND for retrial. As to the district court's summary judgment rulings, we AFFIRM.

---

7. We note that a different case is presented where an employer subject to the Federal Employers' Liability Act aggravates an employee's non-work related condition, disease or injury. *See Cutter v. Cincinnati Union Terminal Co.*, 361 F.2d 637, 638–39 (6th Cir.1966).