NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0584n.06
Filed: August 16, 2006

No. 05-3791

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

PATRICIA GREEN,

      Plaintiff-Appellant,

v.

JACKSON NATIONAL LIFE INS. CO.,

      Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

_____/

Before:      MARTIN, GUY, CLAY, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. Patricia Green brought this action against Jackson National Life Insurance Company to recover the proceeds of a life insurance policy which it refused to pay her, asserting claims of breach of contract and promissory estoppel. The case was referred to a magistrate judge upon the consent of the parties, pursuant to 28 U.S.C. § 636(c). The magistrate granted Jackson National's motion for summary judgment, and Mrs. Green now appeals that decision. For the following reasons, we reverse.

I.

Mrs. Green was married to the decedent, Carl Green, from December 7, 1976 until Mr. Green's death in 2003. Both had children from previous marriages. In 1983, the Greens both purchased term life insurance policies through Jackson National Life Insurance Company. Initially, Mrs. Green was designated as the primary beneficiary of Mr. Green's $25,000 policy. Mrs. Green

was also the sole beneficiary of Mr. Green's will, which was drafted in 1994 or 1995, and remained unchanged thereafter.

Mr. and Mrs. Green experienced marital difficulties in the fall of 1991 and, as a result, lived apart for several months, after which they reconciled and resumed living together.  During their brief separation, Mr. Green changed the beneficiary of his life insurance policy from Mrs. Green to his two sons from his prior marriage, David and Paul Green.  Through the guidance of his insurance agent, Dan Finke, Mr. Green used Jackson National's beneficiary change form to effect the change.  Mrs. Green acknowledges that the signature on this document is Mr. Green's, but claims that she was unaware of this change in beneficiary, and never discussed the insurance policy with Mr. Green or anyone else prior to October 2002.  Mrs. Green assumed that she was the beneficiary of the policy during this time.

In 1990, Mr. Green grew ill with diabetes.  In 1992, Mr. Green needed procedures to fix cardiac difficulties, and began taking insulin for his diabetes.  In 1994 or 1995, Mr. Green had five-way bypass heart surgery.  Mrs. Green took substantial responsibility in caring for Mr. Green, although Mr. Green had good mental capacity and still could converse and write.  Mrs. Green accumulated approximately $20,000 worth of debt for medical and other expenses in caring for Mr. Green.

In early October 2002, Mr. Green asked Mrs. Green to call Jackson National to determine the primary beneficiary on his life insurance policy, and to "confirm and make sure that you're the beneficiary."  It was typical for Mrs. Green to make these types of phone calls for her husband after his health had declined.  Jackson National's customer service representative told Mrs. Green that

he needed to speak with Mr. Green. After Jackson National's representative heard Mr. Green in the background, he continued to talk to Mrs. Green, asking her Mr. Green's birthday. Mr. Green also took the phone briefly to participate in this phone call. The representative could not find a policy listed under Mr. Green's name and birth date.

After this phone call, Mr. Green suggested that Mrs. Green call Finke, their insurance agent. Finke directed Mrs. Green to collect a copy of Mr. Green's birth certificate and to handwrite a request for a copy of the policy. Mrs. Green drafted an unsigned, handwritten letter, dated October 30, 2002, which stated in part: "Could you please list the beneficiary on the policy." Finke added his own notation to the letter clarifying Mr. Green's date of birth, and forwarded it to Jackson National. In response, Jackson National sent Mr. Green a letter dated November 15, 2002. The November 15, 2002 letter stated in relevant part:

> Thank you for your request for policy information. Because your policy was issued before 1986, a duplicate copy is not available. However, we are able to provide you with the following policy summary:
>
> Insured: Carl Green
> Owner (as of current date): Carl Green
> Beneficiary (as of current date): Patricia Green
> Face Amount: $25,000.00
> Issue Date: September 13, 1983
> Issue Age: 59
> Plan of Insurance: Ultimate IV
>
> This certificate is issued based upon a written statement by the owner that the original policy has been lost or destroyed. This certificate in no way changes or modifies the terms and conditions of the original policy. It is verification that the above policy was issued. Any additional information about the benefits may be obtained at any time by writing to Jackson National Life's home office in Lansing Michigan.

Mrs. Green testified that after receiving this letter, Mr. Green was "relieved," and told Mrs. Green

"[y]ou're the beneficiary." He also expressed this sentiment to Mrs. Green's two sisters, saying "we got the response from Jackson, they found my policy, and Pat's the beneficiary. So we're all set now, everything's taken care of." Mrs. Green also testified that Mr. Green made a similar statement to a family friend.

Mr. Green died on January 9, 2003. After his death, Mrs. Green called Finke to ask him "what [she] needed to do to process [her] claim as beneficiary of the insurance." Finke told Mrs. Green to send him a copy of Mr. Green's birth certificate as well as Mr. Green's obituary from the newspaper. Finke promised to process the papers and told her that after Jackson National responded in about ten to fourteen days, he would set up an appointment with her "to move forward."

On February 7th, 2003, Mrs. Green received a letter from Jackson National stating that David Green and Paul Green were the beneficiaries of the policy. Mrs. Green called Finke that same day and told him about the letter. Finke was surprised and told Mrs. Green that he would check into the situation. He called Mrs. Green back later, and affirmed the contents of Jackson National's letter. Later that evening, Mrs. Green called David and told him that he and Paul were the beneficiaries of the policy. Paul Green came to Mrs. Green's shop to pick up a copy of Mr. Green's birth certificate for his mother's (Mr. Green's first wife's) use in redeeming her policy on Mr. Green. Per Finke's instructions, Mrs. Green gave Paul Mr. Green's death certificate, her copy of the life insurance policy, and the February 7th letter from Jackson National which specified that David and Paul Green were the beneficiaries of the policy.

Mrs. Green concedes that Mr. Green signed the change in beneficiary form in 1991 naming his sons as beneficiaries. Mrs. Green claims that prior to his death, Mr. Green discussed with her

his wish that she use the insurance money to pay off his medical debt and funeral expenses, and then use the rest to take a vacation.

Mrs. Green filed suit in Ohio state court on February 17, 2004. Her complaint alleged two breach of contract claims, one based on the theory that by paying the premiums herself she became a party to the contract, and the other based on her rights as a third party beneficiary. The complaint also included claims for promissory estoppel and bad faith refusal to pay the proceeds of an insurance policy. On March 22, 2004, Jackson National removed the case to the United States District Court for the Southern District of Ohio, which had diversity jurisdiction over the suit. With the consent of the parties, the case was assigned to Magistrate Judge Timothy Hogan. The magistrate granted in full Jackson National's motion for summary judgment on May 13, 2005.

II.

This Court reviews a district court's grant of summary judgment de novo, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment can only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On appeal, Mrs. Green argues that the magistrate erred in granting summary judgment because issues of material fact exist regarding (1) whether Mrs. Green was an intended third party beneficiary of her husband's life insurance policy; (2) whether the November 15, 2002 letter from

Jackson National constituted a waiver of the change of beneficiary provisions of the insurance policy; and (3) whether Jackson National should be required to compensate Mrs. Green based on the November 15, 2002 letter under the doctrine of promissory estoppel. This diversity case is governed by Ohio contract law.

## A. Third Party Beneficiary Status

Under Ohio contract law, an individual who is not a party to a contract may have enforceable rights as an intended third party beneficiary where "the promisee . . . intends that a third party should benefit from the contract." *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 521 N.E.2d 780, 784 (Ohio 1988) (quoting *Norfolk & Western Co. v. United States,* 641 F.2d 1201, 1208 (6th Cir. 1980)). In this case, Mr. Green's life insurance contract obviously had some intended third party beneficiary — whatever individual was specified in the insurance policy was intended by both contracting parties to receive $25,000 when Mr. Green died.

Mrs. Green's deposition testimony supports her claim that she was the intended beneficiary of the insurance policy. She testified that Mr. Green took the initiative in contacting Jackson National, either saying "Pat, let's just confirm and make sure that you're the beneficiary," or "that everything is in order for us," which she took to mean the same thing. She also testified that upon receiving Jackson National's November 15, 2002 letter which stated she was the beneficiary, Mr. Green was "relieved" and told Mrs. Green and others that she was the beneficiary.

Jackson National emphasizes that the "official" designation of David and Paul Green as beneficiaries refutes Mrs. Green's claim that Mr. Green intended her to be the beneficiary. This argument is not availing for a few reasons. First, Mrs. Green claims that Mr. Green attempted, with

her assistance, to change her back to the designated beneficiary. Both her testimony and the handwritten note she sent Jackson National on Mr. Green's behalf support this claim, and if a trier of fact finds this version to be credible, and to be a sufficient attempt to change the beneficiary, the earlier designation of Paul and David becomes irrelevant. Further, Jackson National's letter to Mr. Green on November 15 identifies Mrs. Green as the beneficiary. Thus, at best, Jackson National itself did not know in November of 2002 who the "officially" named beneficiary of the policy was. There is thus a material issue of fact as to who was the designated beneficiary, and by essentially relying on Jackson National's current version of the beneficiary designation, the magistrate impermissibly weighed the evidence at summary judgment in Jackson National's favor.

While Mr. Green's efforts to change his policy's beneficiary to Mrs. Green did not comply with the change of beneficiary provisions of the policy, they may have been sufficient based on the doctrine of substantial compliance. Under Ohio law, "where the insured has an unconditional right to change the beneficiary of an insurance policy, a change may be effected even if the provisions of the policy setting forth the manner of effecting the change were not complied with exactly." *Tomaneng v. Reeves*, 180 F.2d 208, 209 (6th Cir. 1950)); *see also Doughty v. Nat'l Benefit Life Ins. Co.*, Case No. 95AP040027, 1995 Ohio App. LEXIS 6024 (Ohio Ct. App. Dec. 11, 1995). To establish substantial compliance, a party must show "(1) that the insured had determined to change the beneficiary and (2) that he had done everything to the best of his ability to effect the change." *Tomaneng*, 180 F.2d at 209. Mrs. Green's status as a third party beneficiary turns on this possibility, because if Mr. Green "substantially complied" with the change of beneficiary provision, Mrs. Green has standing as a third party beneficiary to enforce the contract.

Given Mrs. Green's testimony that Mr. Green in fact endeavored to change her to the policy's beneficiary and was dissuaded from taking additional steps to notify Jackson National based on Jackson National's statement that Mrs. Green already was the beneficiary, a material issue of fact exists on the issue of substantial compliance. According to Mrs. Green's testimony, Mr. Green had determined to make her the beneficiary of his life insurance policy. This evidence supports the first element of substantial compliance. Her letter to Jackson National was an attempt to confirm, on her husband's behalf, that she was the named beneficiary of his policy. In light of Jackson National's letter stating that she already was the beneficiary, a reasonable trier of fact could find that Mr. Green did everything to the best of his ability to effect the change. Alternatively, although the magistrate's determination that Mr. Green's actions were insufficient to constitute substantial compliance may ultimately be decided by a trier of fact, this finding involved a weighing of the evidence, and should not have been made at the summary judgment stage. *See, e.g., Doughty*, 1995 Ohio App. LEXIS 6024 at *5 (reversing entry of summary judgment on issue of substantial compliance because of material factual dispute as to whether actions of policy holder amounted to substantial compliance). The Greens' letter to Jackson National, and subsequent reliance on the company's reply, could support a determination that Mr. Green did everything to the best of his ability to change the beneficiary. Mrs. Green has therefore made a sufficient showing as to the second element of substantial compliance. It would have made little sense after Jackson National informed Mr. Green that Mrs. Green was the beneficiary of the policy for Mr. Green to have written back to change the beneficiary from Mrs. Green to Mrs. Green, as Jackson National argues he might have done. It would have been redundant for Mr. Green to write again to Jackson National and essentially cross-

examine the insurance company by saying "are you *sure* my wife is the beneficiary." A rational juror could find that these steps went beyond what was required to show substantial compliance, and that in the face of Jackson National's reply letter confirming his belief that his wife was the beneficiary of the policy, Mr. Green did everything to the best of his ability to effect the change.

Jackson National relies on the case of *Reno v. Clark,* 514 N.E.2d 456, 458 (Ohio Ct. App. 1986) for its argument that Mr. Green's actions here did not amount to substantial compliance. Although *Reno,* like this case, involved an insured who endeavored to change beneficiaries but was thwarted by a mistake of the insurance company, the nature of the insurance company's mistake in *Reno* distinguishes it from this case. The insurance company in *Reno* did not misrepresent who the beneficiary of the insurance policy was to the policy holder. Rather, the insurance company's agent did not have the proper paperwork to change the beneficiary when the insured requested the change, and apparently the change never occurred as the policy holder took no further action. *Id*. at 458. The fact that the insured in *Reno* knew who was identified as the policy's beneficiary and failed to change it distinguishes *Reno* from this case, where Mr. Green may have wanted to change his beneficiary, but was led to believe his intended beneficiary was already designated under the policy. In this case, the dispute over the identity of the intended beneficiary creates an issue of material fact, and Mrs. Green's evidence that Jackson National assured Mr. Green that his wife was the intended beneficiary should have been sufficient to survive summary judgment.

Significantly, the Ohio courts have held that a "decedent's intent and whether there is sufficient compliance with the policy provisions are factual determinations which cannot be resolved in a summary judgment fashion." *Allstate Life Ins. Co. v. Lardner*, No. 54575, 1988 Ohio App.

LEXIS 4529, at *8 (Ohio Ct. App. Nov. 17, 1988). Because the evidence Mrs. Green has introduced created a material issue of fact on the issues of Mr. Green's intent and his substantial compliance, they were particularly suited to be tried to a jury. Mrs. Green needed to come forth with "more than a scintilla of evidence" of Mr. Green's intention to make her the beneficiary and of his efforts to effect the change in order to defeat Jackson National's motion for summary judgment. *See Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 814 (6th Cir. 1996). She has met this standard, and as a result, the magistrate incorrectly granted summary judgment in favor of Jackson National on this issue.

## B. Waiver

The magistrate also granted summary judgment to Jackson National with regard to Mrs. Green's claim that Jackson National waived the change of beneficiary provisions set forth in its insurance policy through its response to her inquiry as to the identity of the policy's beneficiary. The magistrate found that the November 15, 2002 letter could not amount to a waiver, given its express statement that "this certificate in no way changes or modifies the terms and conditions of the original policy," and the fact that the policy provides more formal procedures for changing beneficiary. Mrs. Green challenges this decision on appeal, stating that it is also a question of fact and an improper subject for summary judgment.

Under Ohio law, a party to a contract can waive its rights under a provision of a contract if it relinquishes the right intentionally. *Cokor v. Borden Chemical Div. of Borden*, 1988 Ohio App. LEXIS 5018 (Ohio Ct. App. 1988). In order to prove waiver, a party must show a "clear, unequivocal, decisive act of the party against whom the waiver is asserted." *Id*. at *9.

Based on this standard, there is no evidence that Jackson National waived its right to enforce

the change of beneficiary provisions of Mr. Green's insurance policy. The November 15, 2002 letter only recited who the beneficiary of the policy was, and in fact explicitly provided that it did not change any terms of the original policy. The fact that the company made a mistake in identifying the beneficiary does not amount to a waiver, as a mistake clearly is not an intentional relinquishment of a known right. Mrs. Green's suggestion that a finder of fact could determine that Jackson National knowingly waived the change of beneficiary provision through the letter is unsupported by the language of the letter itself or any other evidence in the record. Thus the magistrate's grant of summary judgment as to Mrs. Green's waiver argument was correct.

## C. Promissory Estoppel

The magistrate also entered summary judgment on Mrs. Green's claim of promissory estoppel. The Ohio Supreme Court has "adopted the doctrine of promissory estoppel that was set forth in the Restatement of the Law 2d, Contracts (1981), Section 90: 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" *Shampton v. City of Springboro*, 786 N.E.2d 883, 887 (Ohio 2003). The state courts have similarly followed the Restatement's definition of a promise as a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *GGJ, Inc. v. Tuscarawas County Bd. of Comm'rs*, No. 2005 AP 07 0047, 2006 Ohio App. LEXIS 2402, at *13 (Ohio Ct. App. May 16, 2006). Pursuant to this standard, a reasonable trier of fact could find in favor of Mrs. Green on her promissory estoppel claim.

Mrs. Green relies here again on Jackson National's November 15, 2002 letter, which states that she was the beneficiary of Mr. Green's insurance plan, claiming that it was "a promise that such information was accurate of [sic] the current date." She also claims that both she and Mr. Green reasonably relied upon that promise.

The magistrate dismissed Mrs. Green's promissory estoppel claim by noting that the November 15 letter did not constitute a promise, and that there was no detrimental reliance on the letter. This conclusion was not supported by uncontested facts, and summary judgment was thus improper. *See Vision America, Inc. v. Levin*, No. C-890707, 1991 Ohio App. LEXIS 707, at *4-5 (Ohio Ct. App., Feb. 20, 1991) (stating that with regard to a claim for promissory estoppel, "[g]enerally, the import of the promise presents questions of fact for the jury. Accordingly, what action or forbearance the promisor reasonably should have expected of the promisee, and whether the action or forbearance flowing from the promise was reasonable present questions of fact that need to be resolved by the jury." (internal citations omitted)).

The primary significance of identifying Mrs. Green as the policy's beneficiary in the November 15 letter was to indicate that Jackson National intended to act by paying her the proceeds of the policy upon Mr. Green's death. A reasonable fact finder could find that this statement amounted to a "manifestation of intention to act or refrain from acting in a specified way," and qualify as a promise under Ohio law. The statement of the Ohio Court of Appeals in *Vision America* that the import of a promise is a factual determination, particularly suited to be submitted to a jury, further bolsters this conclusion.

The magistrate emphasized the fact that the November 15 letter stated that it did not change

the terms of the policy. The exact language of the letter is that it "in no way changes or modifies the terms and conditions of the *original* policy." (emphasis added). Jackson National argues that this language should have indicated to Mr. Green that he could not rely on the letter. However Mrs. Green *was* the beneficiary under the original policy. Although this point largely only confuses the issue, if it is in fact relevant at all, the reference to the original policy bolsters Mrs. Green's claim. Not only was she the beneficiary under the original policy, but the letter confirms that Jackson National's understanding at the time the letter was written was that she still was the beneficiary. Because Mrs. Green's status as beneficiary does not represent a change in the original policy, and Jackson National confirmed that Mrs. Green was still the beneficiary as of November 2002, nothing in this language would suggest to any reader that Mrs. Green might not be the beneficiary, or that Jackson National was not promising to pay her the proceeds of the policy. Similarly, there is nothing in this language that would make it unreasonable for either Mr. or Mrs. Green to rely on the promise.

Jackson National also contends that even if the elements of estoppel were established here, "estoppel is not available to create coverage in the insurance policy, which is not already within the policy's terms." As this Court has noted previously there is no undue expansion of coverage where a party "seeks only the payment of benefits under the express terms of the policy agreement." *Jones v. Jackson Nat'l Life Ins. Co.*, Case Nos. 93-1503, 93-1528, 1994 U.S. App. LEXIS 15400, at *15 (6th Cir. June 20, 1994). Mrs. Green does not seek compensation for some coverage that was not part of the original policy, which distinguishes her claim from those in cases cited by Jackson National, and thus this argument is not relevant here.

Mrs. Green has also provided evidence that both she and Mr. Green relied to their detriment on the November 15 letter. In her deposition, Mrs. Green testified that she incurred roughly $20,000 of debt in purchasing medicine and covering other expenses for her ailing husband. She also testified that she and her husband had planned on her using the insurance proceeds to cover this debt after he died. They also intended that the proceeds be used to cover the expenses for Mr. Green's funeral, and to pay for a vacation for Mrs. Green if possible. These facts demonstrated detrimental reliance on Mrs. Green's behalf, as she took on substantial debt in caring for her husband without pursuing other avenues of funding, anticipating that she could be reimbursed with the insurance proceeds.

Similarly, Mrs. Green introduced facts supporting the contention that Mr. Green relied to his detriment on Jackson National's letter. Mr. Green wanted to call Jackson National to confirm that his wife was in fact the beneficiary. Mrs. Green also testified that Mr. Green was relieved and satisfied when Jackson National confirmed later that she was the beneficiary, and expressed this sentiment to several people. Mr. Green took no further action with regard to the policy from the time he received this letter until his death. Based on this evidence, it would be entirely reasonable to find that Mr. Green relied upon the November 15 letter by refraining from taking any additional action to change the beneficiary of his life insurance policy to Mrs. Green. This reliance was detrimental to Mr. Green (his policy did not officially identify his desired beneficiary) and was reasonable (he relied on a statement from the insurance company that the beneficiary designation was who he intended it to be).

By adopting the definition of promissory estoppel set forth in the Restatement, the Ohio courts have clearly provided that a third party to a promise (here Mrs. Green, who is a third party to Jackson

National's promise to her husband) can recover for her own detrimental reliance on that promise. *See Shampton*, 786 N.E.2d at 887 (providing recovery for detrimental reliance "on the part of the promisee or a *third person*"). It is thus clear that Mrs. Green can advance a promissory estoppel claim based on her reliance, and she has introduced sufficient facts to survive summary judgment on that claim.

We have found no authority under Ohio law addressing whether Mrs. Green could enforce a promise based on the reliance of her husband, the original promisee. Given this uncertainty, we are required to make an "*Erie* guess" as to whether the state's law of promissory estoppel would allow such a theory of recovery. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). In light of related principles of Ohio law, our prediction is that such a theory of recovery would be allowed. Through the adoption of section 90 of the Restatement, the Ohio courts provide for recovery by a third party to a promise based on the third party's detrimental reliance. Of course the doctrine of promissory estoppel also provides for recovery based on the detrimental reliance of the promisee. As the comment to the Restatement makes clear, the policy behind allowing both types of recovery is largely supported by the fact that the promisor can foresee that the promisee, or the third party, will in fact rely on the promise to their detriment.[1] *See* Restatement (Second) of Contracts, §90, cmt. c. ("If a promise is made to one party for the benefit of another, it is often foreseeable that the

---

[1]In fact, it seems possible that there is a *stronger* case for recovery by a third party beneficiary based on the detrimental reliance of the original promisee, as opposed to her own detrimental reliance, as it could likely be *more* foreseeable to the promisor that the original promisee would rely on the promise than that the third party would. Allowing the third party to enforce such a claim simply recognizes that the promise was intended to provide a benefit to the third party, and does less to expand the doctrine of promissory estoppel on its own than does the rule that a third party can recover for her own reliance.

beneficiary will rely on the promise. Enforcement of the promise in such cases rests on the same basis and depends on the same factors as in cases of reliance by the promisee."). Thus, holding the promisor to his promise promotes compensation of detrimental reliance on the promise by either the promisee or an intended third party beneficiary, regardless of which of the two brings the claim to enforce the promise.

Additionally, Ohio law provides for enforcement of a contract by a third party beneficiary to the contract, as discussed above. A rule allowing a third party to bring a claim based on the detrimental reliance of the original promisee merely allows an analogous mode of recovery for claims of promissory estoppel. Significantly, for purposes of foreseeability and the ability to recover, the comment to section 90 of the Restatement distinguishes recovery by a third party beneficiary from that by a third party non-beneficiary, which is "less likely." *Id.* This distinction appears to incorporate, at least in part, the contractual third party beneficiary doctrine into the promissory estoppel realm. Because Mrs. Green has introduced facts showing that she was an intended third party beneficiary of Jackson National's promise, we hold that pursuant to our "*Erie* guess," she can bring a claim of promissory estoppel based on her husband's reliance, as well as her own.

In short, Mrs. Green introduced evidence that Jackson National made a promise to her husband in the November 15 letter to pay her the proceeds of his insurance policy, and that both she and her husband relied on it to their detriment, in her case by incurring substantial debt, and in his case by not formally re-designating her as beneficiary. Also, a fact-finder could determine that Jackson National should have reasonably expected that its letter indicating Mrs. Green was the beneficiary would have caused such reliance. On remand, Mrs. Green can choose to proceed with

her promissory estoppel claim based on both her reliance and that of her husband.

## III.

We affirm the magistrate's holding that Jackson National did not waive the change of beneficiary provision of its insurance policy, but reverse the entry of summary judgment on Mrs. Green's claim to enforce the policy as a third party beneficiary and her claim of promissory estoppel. The magistrate's dismissal of the case is thus reversed, and the case is remanded for a trial on the merits.