George MOISENKO, in his capacity as the personal representative of the estate of Jutta Moisenko, deceased, and individually, Plaintiff,

v.

VOLKSWAGEN AG, a corporation of the Federal Republic of Germany, Defendant.

No. 5:96 CV 49.

United States District Court, W.D. Michigan, Southern Division.

Sept. 28, 1998.

Raymond R. Behan, Michael R. Behan, Schram, Behan & Behan, Okemos, MI, for Plaintiff.

David L. Harrison, Tolley, Vandenbosch & Walton, PC, Grand Rapids, MI, for Defendant.

## OPINION

ENSLEN, Chief Judge.

This matter is presently before the Court on Defendant's motion in limine to exclude testimony by Plaintiff's expert witnesses. The Court concludes that under Sixth Circuit case law, the testimony of Plaintiff's expert Donald Martus must be excluded. The Court further concludes that in the absence of expert testimony on the existence of a design or manufacturing defect, judgment must be entered on behalf of Defendant, and Plaintiff's civil action must be dismissed.

## BACKGROUND

This diversity action arises out of an automobile accident which took place on December 8, 1995. On that date, plaintiff George Moisenko was driving his wife, Jutta, and friend, Manfred Ukelis, from Grand Rapids, Michigan to Michigan City, Indiana in a 1993 Volkswagen Eurovan ("Eurovan"). While driving south on U.S. 131, Plaintiff lost control of the vehicle, which then crossed the median, and was hit by an oncoming car in the northbound lane. When the vehicle came to rest, Mr. Moisenko and Ukelis remained buckled into their seats unharmed, but Jutta Moisenko had been thrown from the vehicle and killed.

Plaintiff George Moisenko filed this "enhanced injury" product liability case, alleging that a design or manufacturing defect in either the rear door latch or the seat belt or both was the cause of Mrs. Moisenko's death and that she would not have been killed if the vehicle had been crashworthy.

The Plaintiff's proposed expert witness is an engineer retained to evaluate the rear

hatch and lock assembly of the Eurovan, and opine as to its crashworthiness. His evaluation included a one-hour inspection of the vehicle, its rear door, latch, and locking assembly, as well as review of photographs of the Eurovan and its door and lock assembly. In his findings, he noted the physical condition of the vehicle. Regarding the latch and lock assembly, he noted that a number of the mechanism's parts were bent. He also noted that the latch could be opened with "a pull of little force." He concluded that the mechanism was "quite clear[ly]" defective. He did not take the mechanism apart, and has never subsequently done so,[1] despite his comment that "[w]ithout taking the mechanism apart, it is difficult to indicate definitively whether the defect ... is a design defect or a manufacturing defect."

## DISCUSSION

Federal Rule of Evidence 702 provides the standards for admissibility of expert testimony. Under Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■■■ The scientific or technical theory which is the basis for an expert's opinion can be called "scientific, technical, or other specialized knowledge" only if a trial judge makes a preliminary finding that it is reliable. *Cook v. American Steamship Co.*, 53 F.3d 733, 738 (6th Cir.1995). The trial judge's mandate to serve as a "gatekeeper" to ensure the reliability of expert testimony applies to all expert testimony, scientific or otherwise. *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir.1994).

■■■ In order for the Court to find an opinion reliable, it must determine whether "the reasoning or methodology underlying

the testimony is scientifically valid." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "A comparable duty is imposed upon the trial court when the subject of the proposed opinion testimony is not 'scientific' knowledge, but 'technical, or other specialized knowledge.' "[2] *Cook*, 53 F.3d at 738. Ultimately, "[a]n expert opinion that is based on scientifically valid principles will satisfy Fed.R.Evid. 702; an expert's subjective belief or unsupported speculation will not." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir.1997). Relevant factors to be considered in evaluating reliability include whether a theory or technique has been tested, published, subject to peer review, or generally accepted. *Glaser v. Thompson Medical Co.*, 32 F.3d 969, 972 (6th Cir.1994). The Sixth Circuit has placed a particular emphasis on whether an expert has performed some sort of testing.

Of particular note is the recent case *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299 (6th Cir.1997). In that case, a biomechanical engineer was called to render an opinion that a shoulder belt in a truck was defective. He performed a visual inspection, as well as a road test on the seat belt's functioning. The court concluded that the expert's opinion "cannot be based on 'good science' when he (1) failed to perform any tests on the lap belt yet concluded it was in proper working condition; (2) conducted no testing to verify his conclusion the shoulder belt was damaged in the June 1989 accident; [and] (3) failed to adequately document testing conditions and the rate of error so the test could be repeated and its results verified and critiqued ...." *Smelser*, 105 F.3d at 304. In another case, the court held that an expert's opinion was inadmissible "because he failed to perform tests or otherwise call upon any 'scientific, technical, or otherwise specialized knowledge' that would have given him a valid basis upon which to form his opinion." *Cook*, 53 F.3d at 740.

**1.** Defendant so notes in its motion, and the Plaintiff does not deny.

**2.** This statement establishes the Sixth Circuit's position on the applicability of a *Daubert*-style analysis to cases such as this one, notwithstand-

ing Plaintiff's citation to *Carmichael v. Samyang Tire, Inc.*, 131 F.3d 1433 (11th Cir.1997), cert. granted sub nom. *Kumho Tire Co. v. Carmichael*, — U.S. ——, 118 S.Ct. 2339, 141 L.Ed.2d 711 (1998).

■ This emphasis on testing is especially resonant in a case like this, where the allegation is that the mechanism should have withstood the forces to which it was exposed in the crash. Mr. Martus opined that the mechanism should "clearly [have been] strong enough to tolerate the impact that it appears this vehicle endured." However, he never determined the severity of that impact. (Martus Deposition ("Depo.") at 63.) In fact, he took no measurements, and performed no calculations before concluding that the latch should not have failed. (Depo. at 57). He relied not on testing, but on his visual inspection. He opined, as well, that the latch was defectively designed, but never tested any comparable latches to see what pressures they could endure. Regarding the manufacturing defect, he gave the latch a cursory inspection without even disassembling it, and declared it defective by manufacture.

The question on which he was retained to offer an opinion is: did the latch mechanism respond appropriately to the crash it endured on December 8, 1995? He opines no, it did not respond appropriately, because of manufacturing and/or design defects. Mr. Martus acknowledged that the government, as well as the Society of Automotive Engineers, has published standards for the loads a latch should endure. (Depo. at 88.) Moreover, he testified that: (1) "[i]f I would take a latch that you folks have and put it through SAE tests, then I could really determine what that latch could take with their standard procedures," (Depo. at 64–65); (2) "[t]here could be some metallurgical testing ... and I could probably do some analysis of how these parts can withstand some load," (Depo. at 58–59); and (3) "I want to review the inside of this locking mechanism and system to see if I can identify more closely what went wrong." (Depo. at 58). While Mr. Martus identified a number of tests that could be performed, he performed none of them. Instead, he relied on "visual appearance" and a "sixth sense." (Depo. at 88). These do not satisfy the Sixth Circuit's Fed. R.Evid. 702 standards.

In his deposition, Mr. Martus did describe one methodology he employed. He first stated that "the hinges and the striker plate and the latch are the three components that hold the door together, and if one of them is designed, if you will, to resist loads, then the other two or three points have to be designed also to resist those loads." (Depo. at 50.) He then noted that the striker plate did not "exhibit any stress." (Depo. at 51.) Since the latch did exhibit distress, he concluded that it did not possess "equal load carrying capabilities," and was therefore defective. (Depo. at 69.) The flaw in this methodology is that Mr. Martus offers nothing to support it. An "expert's bald assurance of validity is not enough." *Smelser,* 105 F.3d at 303 (quoting *Daubert v. Merrell Dow Pharmaceuticals,* 43 F.3d 1311, 1316 (9th Cir.1995) (on remand)). Moreover, it is not at all obvious that each component should be equal in all ways, or that each component was subjected to the same stresses in the accident. Consequently, the Court finds that Mr. Martus employed no scientifically (or technically) valid methodology before rendering his opinion. His opinion, therefore, is deemed unreliable for purposes of Fed. R.Evid. 702, and is inadmissible. In the alternative, given its unreliability, the testimony is inadmissible under Fed.R.Evid. 403, as its probative value is outweighed by the danger of unfair prejudice and misleading the jury. *Cf. Cook,* 53 F.3d at 739 (cautioning against admitting evidence "adorned ... in the dress of scientific or technical expertise and fortified by [a] court's later instruction to the jury calling it 'expert opinion.' ").

In his response, Plaintiff repeatedly notes that his experts relied on the same data as Defendant's experts. This is of no moment, however, since Plaintiff, not Defendant, has the burden of establishing a design or manufacturing defect in this case. Since Plaintiff has this burden and cannot discharge it in the absence of expert testimony on the issue, Plaintiff can not establish liability in this proceeding. Accordingly, his claim against Defendant will be dismissed.[3]

---

3. Dismissal was requested by Defendant in a companion motion, and is entered pursuant to

Fed.R.Civ.P. 56.

*JUDGMENT*

In accordance with the opinion entered this date:

**IT IS HEREBY ORDERED** that Plaintiff's motion that the Court accept its response to the Defendant's *Daubert* motion despite its exceeding 10 pages in length (dkt.# 111) is **GRANTED;**

**IT IS FURTHER ORDERED** that Defendant's motion in limine to preclude expert testimony of Donald G. Martus (dkt.# 101) is **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff's complaint is **DISMISSED** pursuant to Fed.R.Civ.P. 56.