**UNITED STATES of America,
Plaintiff,**

v.

**Gregory SULLIVAN, Defendant.**

**No. CRIM.A.02–45–JBC.**

United States District Court,
E.D. Kentucky,
Covington Division.

Jan. 31, 2003.

---

Laura Klein Voorhees, U.S. Attorney's Office, Covington, KY, for Plaintiff.

Kerry L. Neff, Covington, KY, for Defendant.

*ORDER*

COFFMAN, District Judge.

This matter is before the court on the defendant's motion to exclude expert testimony concerning the identification of latent fingerprints and the plaintiff's motion to admit such testimony. The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion.

■ Fed.R.Evid. 702 governs the admissibility of expert testimony, providing:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion, or otherwise.

The Supreme Court clarified the trial court's role as a gatekeeper under Fed.R.Evid. 702 in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and in *Kumho Tire Co., Ltd., v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). As a gatekeeper, the court must determine that the expert's testimony, whether scientific, technical, or otherwise falling under Rule 702, is relevant and reliable. *Id.* This assessment requires the "objective, independent validation of the expert's *methodology*," as the "expert's bald assurance of validity is not enough." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir.1997) (emphasis added); *Daubert* (on remand), 43 F.3d 1311, 1316 (9th Cir.1995). Thus this inquiry focuses on the validity of the expert's methodology, not his final conclusion. *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. July 28, 1999).

■ A non-exhaustive list of factors guides the court's inquiry: (1) whether the theory or technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) its known or potential rate of error; and (4) whether the theory has gained general acceptance in its field. *Daubert,* 509 U.S. at 592–594, 113 S.Ct. 2786. These factors may not apply in every instance and the trial court has broad latitude in determining the reliability of an expert witness's testimony. *Kumho Tire Co., Ltd., v. Carmichael,* 119 S.Ct. at 1167.

The court accepts the underlying premises of fingerprint analysis—that individual fingerprints are unique and that, absent some intervening factor such as trauma or disease, fingerprints are permanently fixed.[1] These propositions have been routinely accepted by courts, and this court finds the statistical studies and materials on fingerprint development presented by the plaintiff to be convincing. Accepting the uniqueness and permanence of fingerprints, however, does not force the conclusion that law enforcement or other entities have developed a sound and reliable methodology for identifying or excluding individuals based on the comparison of fingerprints.

The methodology employed by the plaintiff's expert, referred to as ACE–V, consists of four steps: analysis, comparison, evaluation, and verification. At the first step, the fingerprint examiner examines and analyzes the variables influencing friction ridges of the known and unknown prints. The examiner considers factors such as the materials on which the prints were deposited, the development processes used, and pressure distortion. If the

examiner concludes that the images are usable (for example, not too smudged or distorted), the examiner moves to the next stage—comparison. At the comparison stage, the examiner starts by determining the general ridge flow and shape (Level 1 Detail) present in the unknown print. These details are used to orient the unknown print to a portion of the known print. The examiner continues his comparison by selecting key focal characteristics (Level 2 Detail) present in the unknown print, determining their type, position, direction, and relation to other characteristics, and then comparing those characteristics to those present in the known print. In some circumstances, the examiner also takes note of ridge attributes, such as ridge edges, ridge endings, and pores (Level 3 Detail). The examiner uses this information to perform the third step, evaluation, and make a conclusion concerning the identity of the unknown print. The examiner may conclude that the unknown print came from the same finger as the known print, that the unknown print did not come from the same finger as the known print, or that there is insufficient information to reach a conclusion. If the examiner concludes that the unknown print matches the known print, the analysis proceeds to the fourth step, and the first examiner's conclusion is verified by a second examiner.

**General Acceptance**

■ The ACE–V methodology easily satisfies the general acceptance factor of Daubert. The historical acceptance of fingerprint evidence in courts does not qualify as general acceptance for the purposes of *Daubert,* as *Daubert* requires the court to consider whether ACE–V has been ac-

---

**1.** That not every person in the world has been printed and found to have unique fingerprints does not tell against the uniqueness of fingerprints. If *no conclusion about the human*

body could ever be reached without the testing of every individual, little would be known about it—or about anything else for that matter.

cepted by a substantial portion of the pertinent scientific or technical community, *United States v. Bonds*, 12 F.3d 540, 561 (1993). The plaintiff's expert, Joy Younce, testified that ACE–V is the standard methodology used by fingerprint examiners in analyzing fingerprints, and that while the terminology may have changed, the actual technique has been in use for some time. The court finds that ACE–V is generally accepted in the fingerprint analysis and forensic science fields for the purposes of *Daubert*.

**Peer Review and Publication**

■ The plaintiff submits that ACE–V has been subjected to peer review, in that examiners oversee and test each other's work on a daily basis, and has been the subject of numerous publications. The defendant contends that peer review requires more than a second examiner reviewing the work of a primary examiner and that publication within the forensic community is insufficient to satisfy *Daubert*.

■ The court agrees with the defendant that a review of an examiner's results by a second examiner, particularly one who knows the first examiner's results, does not constitute meaningful peer review. The court does not agree, however, that publications in journals such as the Journal of Forensic Science cannot satisfy the peer review requirement because they are not widely read outside of the forensic community. Upon reviewing the documentation submitted by the plaintiff, the court finds that ACE–V technology has been subject to peer review and publication as required by *Daubert*.

**Known or potential error rate**

■ The plaintiff asserts that the rate of error for the ACE–V methodology is essentially zero. Any errors in the fingerprint evaluation process, the plaintiff contends, are due to practitioner error, not any fault with the ACE–V methodology itself. Practitioner error, the plaintiff argues, can be effectively controlled by ensuring that the examiner performing the analysis is qualified. The examiner in this case, Joy Younce, has been certified as a qualified examiner and has passed periodic evaluations to maintain that certification. Additionally, Younce testified that she has never had a match rejected at the verification step of the ACE–V process.

The court shares the defendant's skepticism that the ACE–V methodology enjoys a 0% error rate, making it effectively a perfect art. There is no evidence, however, that the ACE–V methodology as performed by the FBI suffers from any significant error rate. The FBI examiners have demonstrated impressive accuracy on certification-related examinations, and Younce testified that an examiner who made a false identification would be finished as an examiner due to the difficulty in rehabilitating him or her as a witness.

While the defendant is correct that the party submitting the evidence has the burden of establishing its reliability under *Daubert*, the defendant has failed to submit any evidence to dispute the plaintiff's evidence of a minimal error rate. Consequently, while the court rejects the plaintiff's claim of a 0% error rate, it finds that the error rate is not sufficient to render ACE–V unreliable under *Daubert*. *Accord United States v. Llera Plaza*, 188 F.Supp.2d 549 566 (E.D.Pa.2002) (concluding that there was no evidence that the error rate of certified FBI fingerprint examiners is unacceptably high).

**Testability of the theory or technique**

■ The defendant contends that there is not sufficient testing to ensure the reliability of expert testimony concerning fingerprint evaluation and analysis. The

plaintiff, however, asserts that fingerprint evaluation has been tested through the adversarial process and is supported by numerous studies that show that fingerprints are both unique and permanent.

" 'Adversarial' testing in court is not, however, what the Supreme Court meant when it discussed testing as an admissibility factor." *United States v. Llera Plaza,* 2002 WL 27305 *10 (E.D.Pa.2002) (*reversed on other grounds* ). While the *Daubert* opinion did not discuss the testing element in detail, the court commented, "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; Indeed, this methodology is what distinguishes science from other fields of human inquiry." *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786 (internal citations omitted) (cited in *Llera Plaza,* WL 27305, at *10). The reliability of ACE–V is not demonstrated by its use in prior court cases.

The court further finds that, while the ACE–V methodology appears to be amenable to testing, such testing has not yet been performed. The court disagrees that testing that establishes the validity of the principles underlying ACE–V—that fingerprints are unique and permanent—can substitute for testing of the ACE–V methodology itself. That testing, however, is relevant as it provides a foundation for the ACE–V methodology.

ACE–V operates on the assumption that, because fingerprints are unique and permanent, unknown prints can be compared to known prints to determine whether the prints were made by the same finger. Studies presented by the plaintiff indicate that the chance of two fingers sharing a common print, or even as little as 21.7% of a print, is vanishingly small. Thus, the plaintiff contends that where a

comparison of two prints finds sufficient commonality without any unexplained discrepancies, a match can be declared.

But as the defendant points out, there is not a standard defining how many similarities must be found before a match is declared. Younce testified that there is no minimum number of "points" in common necessary to declare a match between a known and an unknown print. Indeed, Younce testified that such a requirement would be unscientific. While it is possible that this position is ultimately correct, it is not supported by the studies submitted by the plaintiff. Evidence that no two fingerprints are the same—or that no two 21.7% of a print are the same—is not evidence that no two fingerprints can share a partial print in common.

The court finds that this concern does not render fingerprint evidence unreliable for the purposes of *Daubert.* While the possibility that two fingers may have a fractional portion of a print in common may affect the probability estimates that two fingers may leave the same fractional print, that possibility goes to the weight of the evidence, not its admissibility. *See United States v. Bonds,* 12 F.3d 540, 564 (6th Cir.1993) (argument over effect of ethnic substructures on DNA probability results goes to weight of evidence, not its admissibility). Concerns about the expert's probability estimates can be addressed through cross-examination.

**Conclusion**

The ACE–V is generally accepted; has been subject to peer review and publication; is testable, although untested; and, at least as practiced by the FBI, has an acceptable error rate. Considering these factors, the court finds that the plaintiff's expert testimony is sufficiently reliable under *Daubert.*[2] Accordingly,

---

**2.** In its motion to admit this expert's testimony, the plaintiff provided several cases to sup-

IT IS ORDERED that the plaintiff's motion to admit expert testimony on the identification of latent fingerprints is GRANTED and that the defendant's motion to exclude such testimony is DENIED.

port its contention that "after *Daubert* and *Kumho* the Sixth Circuit has upheld the admission of expert testimony pursuant to Rule 702 on a wide array of subjects." While the plaintiff's assertion may be factually correct, most of the cases cited did not support it. Five of the cases cited pre-dated *Kumho*, and in four of those cases, the court did not analyze the reliability of the expert testimony under *Daubert*. In three of those cases, *Daubert* was not mentioned, and the expert testimony was challenged on bases other than reliability. *United States v. Monus*, 128 F.3d 376, 385–86 (6th Cir.1997) (defendant argues that expert testimony usurped role of jury and was impermissible opinion on legal question);

*United States v. Flowal*, 163 F.3d 956, 961 (6th Cir.1998) (defendant argues that police officer was unqualified to testify because officer had no involvement with case); *United States v. Brawner*, 173 F.3d 966, 969–71 (6th Cir.1999) (defendant argues that witness is not qualified as expert, expert testimony is unnecessary and unfairly prejudicial, and that witness improperly testified as to ultimate issue in case). In the fourth case, *United States v. Jones*, 107 F.3d 1147 (8th Cir.1997), the court specifically stated that because handwriting analysis was a technical rather than a scientific expertise. *Daubert's* reliability requirements did not apply.